UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ERIC WASHINGTON and | ) Case No. 4:23CR 562 HEA/JSD - 2 |
| JUSTIN R. LEE, | )             4:23CR 562 HEA/JSD - 3 |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE[1]

Defendant Eric Washington ("Washington") has filed the following pre-trial motions:

1. Motion to Sever Defendant for Separate Trial and Memorandum in Support ("Motion to Sever"); [ECF No. 174]
2. Motion for Pretrial Disclosure of All Known Inculpatory Evidence, Including But Not Limited to Jencks Act Materials and Memorandum of Law in Support Thereof ("Motion for Disclosure"); [ECF 175] and,
3. Motion to Suppress Evidence from Geofence Search Warrants. [ECF 180]

Defendant Justin R. Lee ("Lee") has filed the following pre-trial motions:

1. Motion for Bill of Particulars and Memorandum of Law in Support Thereof ("Motion for Bill of Particulars"); [ECF No. 169]
2. Motion to Sever Defendant Justin Lee for Separate Trial and Memorandum in Support ("Motion to Sever"); [ECF No. 170]
3. Motion for Pretrial Disclosure of All Known Inculpatory Evidence, Including But Not Limited to Jencks Act Materials and Memorandum of Law in Support Thereof ("Motion for Disclosure"); [ECF 171] and,
4. Motion to Suppress Evidence from Geofence Search Warrant ("Motion to Suppress"). [ECF 198]

Notably, in their Motions to Sever [ECF Nos. 174, 170] and for Disclosure, [ECF Nos. 175, 171],

Washington and Lee (collectively "Defendants") advance the same arguments with nearly

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

identical language. For their Motions to Suppress, Lee simply joins in Washington's written motion. [ECF Nos. 196, 180] The only other motion at issue here is Lee's separately filed Motion for Bill of Particulars. [ECF NO. 169] The United States of America ("government") responded by filing memoranda opposing all of the motions. [ECF Nos. 189, 191, 192, 199, 200]  For the reasons set forth below, the undersigned RECOMMENDS that the motions be DENIED.

## I.        PROCEDURAL BACKGROUND

On June 5, 2024, a federal grand jury returned a Superseding Indictment collectively charging Defendants and their co-defendants, Andrew Hubbard and Kim Mosley, with conspiracy to commit murder for hire in Count I and murder for hire in Count II. [ECF No. 73][2] The Superseding Indictment alleges that both counts relate to the July 7, 2023, murder of Hubbard's mother, Andreaia Worthem. [*Id*.] Eventually, Mosley and Hubbard waived the filing of any pretrial motions on June 16, 2025, and September 15, 2025, respectively. [ECF No. 165, 195]

In their Motions to Sever, Defendants argue that severance of their cases is warranted because (1) there is a serious risk that Sixth Amendment Confrontation Clause issues under *Bruton v. United States*, 391 U.S. 123 (1968) may arise at a joint trial; and (2) they would be prejudiced by a joint trial jury's anticipated inability to distinguish between evidence relevant to their individual cases and evidence relevant to their co-defendants' cases, especially Hubbard's case. [*Id*.] For their Motions for Disclosure, Defendants request this Court to "encourage" the government to produce Jencks Act and other related inculpatory materials early so that they would have enough time to adequately prepare for a fair trial. [ECF Nos, 175, 171] In their Motions to Suppress, [ECF No. 98] Defendants seek suppression of all evidence unlawfully obtained from a

---

[2] On October 18, 2023, a federal grand jury returned the original Indictment charging Washington, Lee, and Hubbard with conspiracy to commit murder for hire in Count I and murder for hire in Count II. [ECF No. 19] Both charges related to the murder of Worthem. [*Id*.]

purported "geofence search warrant" ("Search Warrant"), (Ex. 1) [ECF No. 180-1] as well as all evidence derived therefrom as "fruit of the poisonous tree." [ECF No. 180] In Lee's Motion for Bill of Particulars, he argues that the Superseding Indictment lacks specificity and fails to sufficiently inform him of the nature of the allegations against him such that he can prepare a defense for trial. [ECF No. 169] As such, he requests this Court to direct the government to file a bill of particulars describing with particularity, among other things, his role and related actions in the charged offenses. [*Id.*]

On November 19, 2025, the Court held an evidentiary hearing on the Motion to Suppress. [ECF No. 202] For evidence, neither party called any witnesses, [*Id.*] but the government offered, and the Court received, as the government's Exhibit #1, the Search Warrant. [ECF No. 180-1] Counsel for both parties thereafter argued the motions and responses or submitted their motions and responses as written. The Court then deemed all motions partially heard and submitted and granted Defendants fourteen days after the filing of the hearing transcript to file post-hearing briefs relating to, among other things, each Defendant's inability to call a co-defendant as a witness at a joint trial. [ECF No. 204] The Court granted the government fourteen days after that to file a response, at which point Defendants' pretrial motions would be deemed wholly submitted. [*Id.*]

The transcript was filed on December 9, 2025. [ECF No. 205 (Tr.")] Lee filed his Supplemental Suggestions Regarding [his] Motion to Sever on December 18, 2025. [ECF 206] The government filed its Post-Hearing Brief [ECF No. 207] on January 4, 2026, when Washington filed his Notice of No Post Motion Brief. [ECF No. 208] On January 7, 2026, the Court granted the government's Motion for Leave to File [its Post-Hearing Brief] Out of Time. [ECF Nos. 210, 209] Therefore, the Court deems the matter wholly submitted as of January 4, 2026. [ECF No. 211]

## II.    FINDINGS OF FACT

On July 20, 2023, during the course of the investigation into Worthem's murder, Detective Matthew Boester of the St. Louis Metropolitan Police Department sought and obtained, from a state court judge in the Circuit Court of the City of St. Louis, State of Missouri, the Search Warrant for certain cellular tower data and records from AT&T, Sprint, T-Mobile, and Verizon. (Ex. 1) In his supporting Affidavit, Detective Boester included, among other things, the following information for the state court judge's review:

> On July 7, 2023, the Saint Louis Metropolitan Police Department received a radio assignment for a "Person Down" at approximately 0557 hours near 4429 Kennerly Avenue. EMS arrived, observed the victim appeared to be shot, and notified this Department at approximately 0605 hours. District Five Officers arrived on scene and observed a black female with apparent puncture wounds to her body and face. Apparent blood was near the victim's body. The victim's body was located in an alley near a vacant multifamily apartment building. The victim was not conscious or breathing and was pronounced deceased on scene by EMS.
>
> The victim was forensically identified as Andreaia Worthem, …
>
> Detective Boester along with other Homicide Detectives responded to the scene and initiated their investigation. Detectives observed the deceased female lying in the north alley of the 4400 block of Kennerly. No ballistic evidence was located on the scene. She sustained apparent puncture wounds to her chest, arm, and face. No cellular telephone was recovered on or near her body, The victim was fully clothed. The victim's shoes were untied, and Investigators observed one shoe fall off, when she was rolled over to be transported to the Medical Examiner's Office. Near the victim's body was makeup, a key on a keychain, a cigarette, bottle cap, and an apparent tooth.
>
> Investigators observed the victim to be in a state of rigor mortis and observed lividity on her back. This was consistent with the victim being at that location for a period of time, possibly being killed overnight.
>
> An interview with the victim's family revealed that the victim commonly possessed a cellular telephone with the number of 618-556-9293. The family advised she had that number for approximately six months and a member of the family last spoke to her approximately a week prior to her murder on that phone number.
>
> The victim's cellular telephone was not recovered at the scene and has not been

4

recovered as of the generation of this affidavit.

Detective Boester requested exigent historical and prospective records pertaining to the victim's phone.

AT&T produced the data to Detective Boester.

The live location information revealed that the phone was either turned off, placed in airplane mode, destroyed, etc.

The historical information produced by AT&T was limited to two days prior to the murder. A review and investigation revealed the following:

On July 6, 2023, the device was in the area of the 10000 block of Toelle Lane in St. Louis County near an apartment complex at approximately 7:12 PM. At approximately 9:58 PM, the device is in the same general vicinity. At approximately 10:09 PM, the device appeared to move south where it was located near North Broadway and Calvary or the 7400 block of Hall Street. At approximately I0:12 PM, the device was located near the 1900 block of Adelaide Avenue. This area has residential structures along the southeast portion of the street and O'Fallon Park along the northwest portion of the street. At 10:18 PM, the victim's device appears to begin to travel to the west.

At 10:24 PM, the victim's device is located near where her body is eventually discovered. The device ceases to produce precision location data following 10:26 PM. At approximately 04:57 AM on July 7, 2023, the device produced location information several blocks to the east of the victim's body for a short period of time.

It was noted by Investigators that the device appeared to be north of Natural Bridge Avenue at 10:18 PM and south of Natural Bridge at 10:24 PM. It appeared to Investigators that from where the victim's device was located near O'Fallon Park to the 4400 block of Kennerly and the time frame in which the device moved, the device was in a vehicle.

(*Id*.)

After Detective Boester referenced his experience and described extensive background regarding, among other things, cell phone use in criminal cases, cellular communication providers, cell towers, and historical cell phone records, his Affidavit requested AT&T, Verizon, T-Mobile, and Sprint (collectively "providers") to produce records relating to communications to and from cell towers, for all cellular telephones active for the date of July 6, 2023, within .25 miles of (1)

5

the crime scene, from 10 p.m. to 11:30 p.m.; (2) "the area where [Worthem's] device appeared to move after leaving her known home area," from 9:45 p.m. to 10:45 p.m.; and, (3) Worthem's residence, from 9:15 p.m. to 10:15 p.m. (*Id.*) Also, the Search Warrant itself identified, among other things, the specific latitudinal and longitudinal coordinates and cell towers at issue as well as the information to be disclosed by the providers and to be seized by the government. (*Id.*)

> Notably, the Affidavit further stated that the providers:

> …routinely and in their regular course of business maintain historical cell-tower log information, including records identifying wireless communications that were transmitted through a particular cell tower….

> …routinely and in their regular course of business maintain historical records that allow them to determine which wireless devices used cellular towers on the cellular provider's network to send or receive communications.

(*Id.*) In its conclusion, the Affidavit then explained that

> Once data and records identified in Section 2 are received for the cellular telephones utilized in and around the area of the above-described incidents, law enforcement will be able to compare those numbers to known numbers of potential subjects that may be developed during the ongoing investigation.

(*Id.*)[3]

## III.    DISCUSSION

### A.  Motions to Sever

In their Motions to Sever, each of the Defendants ask this Court to sever his case from the cases of all other co-defendants so that they may be tried separately. [ECF Nos. 170, 174] Defendants first argue that severance is warranted because of the potential, in joint trials, for a Confrontation Clause violation.  In so doing, they reference statements, purportedly made by Hubbard and Mosley, which they anticipate the government might be offering at a joint trial. Citing

---

[3] The Search Warrant was ultimately executed and yielded evidence that the government would expectedly offer at trial.

6

*Bruton*, 391 U.S. at 126, Defendants assert that, in a joint trial, "the introduction of 'incriminating extrajudicial statements' by any non-testifying co-defendant 'violates [their] right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." [ECF Nos. 170 at 5, 174 at 5]

For their second point, Defendants claim severance is necessary because of the overall prejudice they would bear from a joint trial wherein evidence individually relevant only to the cases of each of the co-defendants would be presented. For support, Defendants point to a joint trial jury's anticipated inability to "compartmentalize the evidence as it relates to separate defendants." [ECF Nos. 170 at 7, 174 at 6, quoting *United States v. Sandstrom*, 594 F.3d 634, 644 (8th Cir. 2010)] Defendants also reference the government's expected attempt to introduce Hubbard's admission that he solicited their assistance in the heinous murder of his mother.[4]

In its response to the possible *Bruton* issue, the government first quotes the Eighth Circuit explaining that "a *Bruton* violation must be predicated on a testimonial out-of-court statement implicating a co-defendant." *United States v. Dale*, 614 F.3d 942, 958 (8th Cir. 2010). After accepting the Eighth Circuit's definition of "testimonial statements" as, among other things, those "statements made in the course of police interrogations," *see United States v. Garth*, 540 F.3d 766, 778 (8th Cir. 2008), the government expressed no intent to present, at trial, the testimonial statements of any co-defendant who elects not to testify. Consequently, the government maintains that there is no basis to sever Defendants' cases pursuant to *Bruton*.

In its response to Defendant's allegations of prejudice, the government initially explains that the preference for joint trials in conspiracy cases outweighs any risk of prejudice. The

---

[4] During oral argument on November 19, 2025, Defendants argued that they were prejudiced by a joint trial because, unlike separate trials, each of them would be unable to call any co-defendant as a witness. After the Court ordered post-trial briefing on the issue, Defendants withdrew this argument as a ground in support of their Motions to Sever. [ECF No. 206]

government also asserts that any risk of prejudice to Defendants in a joint trial could be cured by commonly used jury instructions. For this, the government essentially proposes jury instructions directing the jury to "give separate consideration to each individual defendant and to each separate charge[, which would cure] any risk of prejudice in a joint trial." [ECF No. 189 at 4, citing *United States v. Zafiro*, 506 U.S. 534, 540-41 (1993). To be sure, the government argues that Defendants have failed to adequately allege "a real risk that a joint trial would prevent the jury from performing their … duty." [ECF No. 189 at 5]

This Court agrees with the government. In addressing a Motion to Sever, "a district court must first determine whether joinder was proper under Federal Rule of Criminal Procedure 8." *United States v. Ruiz*, 412 F.3d 871, 886 (8th Cir. 2005). Joinder of defendants in a single indictment is proper "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). "Generally, 'the same series of acts or transactions' means acts or transactions that are pursuant to a common plan or a common scheme." *United States v. Wadena*, 152 F.3d 831, 848 (8th Cir. 1998). Rule 8(b) further provides that "[t]he defendants may be charged in one or more counts together or separately" and that "[a]ll defendants need not be charged in each count."

Nevertheless, under Federal Rule of Criminal Procedure 14, "[i]f the joinder of…defendants in an indictment…appears to prejudice a defendant…the court may…sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro v. United States*, 506 U.S. 534, 541 (1993). The rules regarding joinder and severance "are designed 'to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to

8

the right of the defendants to a fair trial.'" *Id*. at 540 (quoting *Bruton*, 391 U.S. at 131 n.6). Thus, the Eighth Circuit has explained that these rules should be construed liberally in favor of joinder. *See United States v. Johnson*, 462 F.3d 815, 821 (8th Cir. 2006); *United States v. Moyer*, 313 F.3d 1082, 1085 (8th Cir. 2002).

Moreover, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro*, 506 U.S. at 537. "This preference is 'especially compelling when the defendants are charged as coconspirators.'" *Id*. (quoting *United States v. Basile*, 109 F.3d 1304, 1309 (8th Cir. 1997); *see United States v. Sherman*, 81 F.4th 800, 805-06 (8th Cir. 2023) ("The general rule is that persons charged in a conspiracy should be tried together"). As such, a defendant seeking severance carries a heavy burden of showing "real prejudice" from joinder, *United States v. Payton,* 636 F.3d 1027, 1037 (8th Cir. 2011), which is "something more than the mere fact that he would have had a better chance for acquittal had he been tried separately." *see United States v. Oakie*, 12 F.3d 1436, 1441 (8th Cir. 1993) (quoting *United States v. Adkins*, 842 F.2d 210, 211-12 (8th Cir. 1988)).

Here, as Defendants concede, the initial joinder of the four co-defendants was proper under Rule 8. All of the co-defendants are alleged to have participated in the same series of acts or transactions pursuant to a common plan or a common scheme. To be sure, they purportedly used cellular telephones to conspire to commit the murder of Worthem for money.

Moreover, with these coconspirators properly joined and considering the criminal rules of procedure's preference for judicial economy and efficiency favoring joinder, Defendants have failed to meet the heavy burden demonstrating "real prejudice" by their joinder. Indeed, the government has openly declared that it does not intend to present testimonial statements made by any co-defendant at trial. [ECF No. 189-3] As a result, the potential for the introduction of

9

extrajudicial statements by any non-testifying co-defendants in violation of *Bruton* and the Sixth Amendment has been eliminated.  Additionally, even without the government's announcement, the preference in the federal system for joint trials for defendants who are charged as co-conspirators easily outweighs any risk of prejudice. Undoubtedly, in a joint trial, the trial court could cure any concern for prejudice by providing the jury with commonly given jury instructions directing the jury to give independent consideration to each individual co-defendant and each individual charge. *See Zafiro*, 506 U.S. at 540-41.

For all these reasons, Defendants' Motions to Sever [ECF Nos. 170, 174] fail to demonstrate that they are entitled to relief.

### B.  *Motions for Disclosure*

In their Motions for Disclosure, [ECF No. 171, 175] Defendants asks this Court to issue an order compelling early disclosure of all Jencks Act materials by the government. More specifically, Lee requests production of these materials "no later than one month prior to trial, or such other time as the Court deems appropriate." [ECF No. 171 at 5] Washington seeks these materials "no later than 60 days prior to trial, or such other time as the Court deems appropriate." [ECF No. 175 at 5] While Defendants acknowledge the government's practice of disclosing *Jencks* materials on the Friday before trial, they maintain that earlier disclosures as requested would allow them adequate time to examine the materials, promote trial efficiency and fairness, and prevent delay.

Citing the language of the Jencks Act itself, the government responds that the Act imposes upon the government the obligation to produce a "statement or report…made by a Government witness" only "[a]fter [the] witness called by the United States has testified on direct examination." [*Id.* at 2] As such, the government emphasizes that the Court has no authority to compel Jencks Act material production "at a time other than [as] is set forth in the Act." [*Id.*] Nevertheless, the

government confirms that it will provide the Jencks Act material on the Friday prior to trial, according to its typical practice.

This Court agrees with the government's analysis of the Jencks Act. Pursuant to the unambiguous language of the Jencks Act itself, 18 U.S.C. § 3500(a), (b), this Court lacks the authority to compel the disclosure of Jencks Act materials as requested by Defendants.  Indeed, the government is obliged to produce a government witness' statement only after the witness has testified on direct examination. 18 U.S.C. § 3500(b) The government's assurance that it will disclose the requested materials on the Friday before trial appears sufficient, and Defendants have failed to demonstrate that earlier disclosure is otherwise warranted.

For these reasons, Defendants' Motions for Disclosure [ECF Nos. 171, 175] fail to demonstrate that they are entitled to relief.

### C.  Motion to Suppress Evidence

In their Motions to Suppress Evidence, [ECF No. 180, 196] Defendants request that this Court suppress all evidence obtained by law enforcement pursuant to the Search Warrant and all evidence derived therefrom as "fruit of the poisonous tree." Defendants characterize the Search Warrant as a "geofence warrant" and argue that it is an unconstitutional general warrant because, among other things, it is overbroad, lacks particularity, and allows law enforcement the "discretion to obtain private information from devices of interest. [ECF No. 180 at 1-2] Citing *Carpenter v. United States*, 585 U.S. 296 (2018) and *Katz v. United States*, 389 U.S. 347, 361 (1967), Defendants assert that, like all cell phone owners, they have a reasonable expectation of privacy in their cell phone location data.

They contend that the Search Warrant here, as a geofence warrant, impermissibly allows law enforcement to seize this data "from anywhere outside the geofence for an unknown subset of

users, identified solely by investigators, with no additional showing or judicial involvement." [ECF 180 at 12] Defendants complain that the Search Warrant unlawfully authorizes law enforcement to gather "location information on any and all individuals who [were] near a purported crime scene" without specifying which provider's accounts to search, the number of individuals affected, or even that the shooter was a cell phone user. They maintain that, as a general warrant, the Search Warrant improperly left "the question of whose data to search and seize almost entirely up to the discretion of the executing officers." [*Id*. at 11] Defendants argue that, even if this Court finds that the geofence warrants here are not unconstitutional, the Court should grant their Motions to Suppress because the warrants lack particularity and failed to establish probable cause.

The government responds that this Court should deny the motion because the reasoning and analysis of *Carpenter* is inapplicable here. First, the government refers to the evidence at issue as "timing advance data, or "tower dumps," obtained through the state court Search Warrant, which is distinguishable from the cell site location information acquired without a warrant, like in *Carpenter*. While pointing out, among other things, that the *Carpenter* Court noted that its holding was narrow and that the investigators in *Carpenter* had failed to secure a search warrant, the government cited the Eighth Circuit's recent, post-*Carpenter* approval of "cellular-tower data, which allowed [investigators] to compare numbers that connected to nearby towers during an approximately 90-minute period around each robbery." *See United States v. James*, 3 F.4th 1102, 1104 (8th Cir. 2021). Second, the government requests that this Court resist Lee's conflation of cellular company tower dumps with Google's Sensorvault geofence data seen in geofence warrants. The government explains that geofence warrants require a company to search through all of its accounts for all of their locations at a given point in time; conversely, timing advance data, or tower dump, warrants are constrained geographically and temporally. Third, the

12

government argues that this Court should deny Lee's Motion to Suppress because investigators obtained valid tower dump warrants which were supported by probable cause. By this response, the government presupposes that "Defendants' claims here survive only if the issued state [court] search warrant is invalid." [ECF No. 199 at 10] In this context, government asserts that the Search Warrant was valid because it was supported by probable cause. Finally, the government argues that, in the alternative, even if this Court finds the Search Warrant is a general warrant, the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984) applies. *See United States v. Escudero*, 100 F.4th 964, 968 (8th Cir. 2024) (under *Leon* good faith exception to exclusionary rule, evidence will not be suppressed if executing officer's reliance upon warrant was objectively reasonable).

Generally, when deciding a motion to suppress evidence seized pursuant to a search warrant, "[t]he duty of the reviewing court is simply to ensure that the [issuing judge] had a 'substantial basis for…concluding' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1933)). Probable cause to issue a search warrant exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of crime will be found in a particular place. *Gates*, 462 U.S. at 238; *see also United States v. Ivey*, 91 F.4th 915, 918 (8th Cir. 2024).  More to it, "only that information which is found within the four corners of the [search warrant's] affidavit may be considered in determining [whether or not] probable cause [existed]." *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014) (internal quotations and citations omitted); *see United States v. Miller*, 11 F.4th 944, 953 (8th Cir. 2021) (Only if the affidavit submitted in support of a warrant application "could not have supported the existence of probable cause will suppression be warranted.") (internal quotations and citations omitted). When making the probable cause determination, courts must consider that the Fourth Amendment requires warrants to "particularly describe[e] the place to be

13

searched, and the persons or things to be seized." U.S. Const. amend. IV; *See Maryland v. Garrison*, 480 U.S. 79, 84 (1987) ("The manifest purpose of th[e] particularity requirement was to prevent general searches.")

If evidence has been obtained pursuant to a search warrant without probable cause in violation of the Fourth Amendment, that evidence is subject to the exclusionary rule and, therefore, "cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). Under the "fruit of the poisonous tree doctrine," evidence derived from such illegal police conduct is subject to the exclusionary rule. *Wong Sun v. United States*, 371 U.S. 471, 485, 487-88 (1963). Nevertheless, "in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has [a reasonable] expectation of privacy in the place searched[.]" *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). With cellphones, a cellphone owner has a reasonable "expectation of privacy in the record of his physical movements as captured through cell-site location information." *Carpenter v. United States*, 585 U.S. 296, 310 (2018).

As to "geofence warrants" relating to cellphones in particular, there is very little case law on the topic. To be sure, the United States Supreme Court has not yet decided whether or not geofence warrants are unconstitutional, although the Court has accepted certiorari on the issue in *United States v. Chatrie*, 107 F.4th 319, 332 (4th Cir. 2024), reh'g en banc granted, No. 22-4489, 2024 WL 4648102 (4th Cir. Nov. 1, 2024), 136 F.4th 100 (4th Cir. 2025) per curiam affirmed, *cert granted*, No. 25-122, *Chatrie v. United States*, 2026 WL 120676 (January 16, 2026). In *Chatrie*, the Fourth Circuit, in a per curiam opinion en banc, affirmed the district court's judgment denying defendant's underlying motion to suppress. Several concurring opinions accompanied the opinion

14

and included, among other things, findings that the good faith exception applied and that the execution of the geofence warrant was not a search under the Fourth Amendment.  *See Chatrie,*136 F.4th at 101-156, *concurring opinions*.  In *United States v. Smith*, 110 F.4th 817 (5th Cir. 2024), the Fifth Circuit went further and concluded that geofence warrants were unconstitutional general warrants, but ultimately found, under the circumstances, that the good faith exception under *Leon* applied to the specific warrant at issue.

Interestingly, the Eleventh Circuit, in *United States v. Davis*, 109 F.4th 1320 (11th Cir. 2024), held that the defendant there lacked standing to challenge the geofence warrant and had no reasonable expectation of privacy under the third party doctrine. The *Davis* court defined a geofence warrant as:

> a specific type of warrant used to collect information on the presence of a cell phone or other device within a specific area during a set time frame, typically corresponding with the timing and location of a crime. These warrants seek data from a company like Google, that has access to device location through the company's users. *See United States v. Rhine*, 652 F.Supp.3d 38, 66-67 (D.D.C. 2023). Geofence warrants are particularly useful when investigators know the location and time of a crime but cannot identify a suspect. *Id*. at 66.

*Id.*, at 1328. Both the *Chatrie* and *Smith* courts similarly defined geofence warrants. *Chatrie*, 107 F.4th at 324-325; *Smith*, 110 F.4th at 824. In reviewing this limited case law addressing geofence warrants, it appears that Google is and has been the primary recipient of geofence warrants due to its "Sensorvault" location history database. *Smith*, 110 F.4th at 822-23.  It also appears that geofence warrants served on Google mandate the following three-step process:

> First, law enforcement specifies the geographic area and timeframe for the search, directing the company where and when to gather data. Second, the company provides law enforcement with an anonymized list of users or devices that match the warrant's temporal and geographical criteria. At this point, law enforcement may seek additional information about specific users outside of the initial search parameters. Third, law enforcement analyzes that information and requests that the company "unmask" certain users and release further identifying information.

15

> Law enforcement then uses that identifying information to determine whether any of the users may be connected to the crime.

*Davis*, 109 F.4th at 1328; *see also Chatrie*, 107 F.4th at 324; *Smith*, 110 F.4th at 824-827

Notably, the Eighth Circuit has not addressed the constitutionality of geofence search warrants. However, post-*Carpenter*, the Eighth Circuit affirmed the district court's denial of defendant's motion to suppress wherein defendant challenged search warrants for "cellular tower data, which allowed [investigators] to compare numbers that connected nearby towers during an approximately 90-minute period around each robbery." *James*, 3 F.4th at 1104. Investigators' comparison of numbers there allowed them to discern a common number leading them to the defendant. *Id*. In defying the defendant's challenge to the search warrants on particularity and probable cause grounds, the Eighth Circuit first determined that the judges who approved the warrants had "a substantial basis[, under the totality of circumstances,] for concluding that probable cause existed." *Id*. at 1105. For support, the Eighth Circuit cited the warrants' accompanying affidavits, which "described the robberies in detail, including the overlapping facts that led investigators to believe that a single individual committed all of them." *Id*. The Eighth Circuit also pointed to the affidavits' explanation as to how cellular tower records would identify the robber. *Id*. (citing *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008)). Significantly, the Eighth Circuit further stated that, "[c]ell phones are common and, even if there was no direct evidence that the robber had one, criminals will, in the investigator's training and experience, use them to contact co-conspirators during or after committing a crime." *Id*. The Eighth Circuit then expressed that, if the robber had so used his cellphone, "his cell phone would have connected to a nearby tower, which investigators could then discover by examining the records kept by cellular providers." *Id*. In its analysis, the Eighth Circuit directly refuted the defendant's contention that "no one could connect the robber to a cell phone." *Id*. (citing *United States v. Tellez*, 217 F.3d 547,

16

550 (8th Cir. 2000) ("explaining probable cause's 'nexus' requirement"). Additionally, the Eighth Circuit found that the search warrant was sufficiently particular under the Fourth Amendment. Id. at 1106. For this, the Eighth Circuit explained that:

> T]he search warrants were "constrained—both geographically and temporally—to the robberies under investigation." Geographically, they covered only the cellular towers near each robbery. Temporally, the period was narrow and precise: only about 90 minutes, with exact times listed. Given these specific limitations, the warrants were "sufficiently definite" to eliminate any confusion about what the investigators could search.

*James*, 3 F.4th at 1106.

In the context of the present record, the Search Warrant resembles more of a timing advance data, or tower dump, type of search warrant as addressed in *James* rather than the geofence warrant suggested by Defendants and challenged in *Chatrie*, *Smith*, and *Davis*. Indeed, the record here is devoid of any circumstances demonstrating otherwise. Like the investigators' warrants in *James*, Detective Boester's Search Warrant sought cellular tower data so that he could simply compare numbers that connected to the identified cell towers during the stated time frames. In fact, he specifically stated that data and records from the three requested areas would be used by law enforcement "to compare those numbers to known numbers of potential subjects that may be developed during the ongoing investigation." (Ex. 1)

Moreover, like the warrants in *James*, the Search Warrant lacks any mention of a three-step process of a Google Sensorvault geofence warrant. The record is wanting of any showing that the Search Warrant requires a provider to search through each of its accounts in something similar to Google's Sensorvault, which contains 592 million accounts, to locate responsive records. *See Smith*, 110 F.4th at 824. Additionally, the record does not demonstrate that the Search Warrant is a general warrant leaving "the question of whose data to search and seize almost entirely up to the discretion of the executing officer's discretion of law enforcement."

17

Rather, the Search Warrant here, like the warrants in *James* and unlike a general warrant, established probable cause and was sufficiently particular. First, under the totality of the circumstances and looking only at the information found within the four corners of the Affidavit, the state court judge certainly had a substantial basis for finding probable cause to issue the Search Warrant. For example, the Affidavit expressed that the state of the victim's body, in rigor mortis with lividity on her back, was consistent with the victim being at that location for a period of time and suggested that she had possibly been killed the night before. The Affidavit also described the nature of the crime in detail, including the different whereabouts of the victim based upon her cell phone records, during the time period leading to up her death. The Affidavit further explained why cellular tower records would help law enforcement identify the perpetrator(s) because, in the affiant's training and experience, a criminal's cell phone connects to a nearby tower. The Affidavit asserted that investigators could discover this connection by examining the various cellular providers' records.

More to it, like the warrants in *James*, the Search Warrant here is sufficiently particular, constrained both geographically and temporally. Geographically, the Search Warrant covered only the cellular towers near the victim's home, the crime scene, and the path along which the victim's device appeared to travel after leaving her home. Temporally, the periods for each tower named were narrow and precise, with thirty minutes requested for two of the towers and ninety minutes requested for one. (Ex. 1).

Even if the Court ignored the Search Warrant's particular details establishing probable cause and determined that the Search Warrant was a general warrant or geofence warrant, the *Leon* good faith exception would apply, just as it did in *Chatrie* and *Smith*. Under the good faith exception, "disputed evidence will be admitted if it was objectively reasonable for the officer

18

executing the search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *United States v. Mayweather*, 993 F.3d 1035, 1041 (8th Cir. 2021) quoting *United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012). As a result, evidence seized pursuant to a search warrant which lacked probable cause is nevertheless admissible at trial. *Id*. When deciding whether an officer had an objectively reasonable belief that probable cause existed, a court must assess "the totality of circumstances, including information known to the officer but not presented to the issuing judge." *United States v. Fiorito*, 640 F.3d 338, 334 (8th Cir. 2011). However, the good faith exception does not apply:

> (1) when the issuing magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false; (2) when the issuing magistrate wholly abandoned his judicial role; (3) when the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable; and (4) when the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid.

*Smith*, 110 F.4th at 839 (quoting *United States v. Woerner*, 709 F.3d 527, 533-34 (5th Cir. 2013) (citing *Leon*, 468 U.S. at 921-25).

Here, when officers executed the Search Warrant, they had an "objectively reasonable" belief, under the totality of the circumstances, that the warrant was properly issued.  Leon, 468 U.S. at 918-21. According to the Affidavit, the officers were aware of a suggested time period for the victim's killing, details regarding the nature of the homicide, and the locations of the victim's cell phone during the time period leading to up her death. By obtaining the requested cellular tower records, law enforcement could ascertain suspects by comparing cellphone numbers that connected to the same cellular towers to which the victim's cell phone connected during the stated time frames.

Moreover, none of the exceptions to the good faith exception identified in *Smith* apply. 110

19

F.4th at 839. First, the record lacks any evidence showing that Detective Boester was reckless and misled the judge. Second, the record is devoid of any evidence that the issuing state court judge wholly abandoned his or her judicial role. Third, for the reasons already stated above, the Search Warrant Affidavit was not so lacking in indicia of probable cause as to render official belief in its existence unreasonable. Fourth, also for the reasons stated above, the Search Warrant was not so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid.

For all these reasons, Defendants' Motions to Suppress Evidence [ECF No. 180] fails to demonstrate that they are entitled to relief.

***Motion for Bill of Particulars***

Finally, in his Motion for Bill of Particulars, [ECF No. 169] Lee initially requests permission from this Court to allow its late filing under Fed. R. Crim. P. 7(f). He attributes the Motion's belatedness to delays caused by discovery and matters related to this case's previous status as "death-eligible." As to the substance of the Motion, Lee argues that the Superseding Indictment is vague and fails to adequately describe the specific allegations related to him. Among other things, he cites the charging document's silence as to what pecuniary value he was promised or received; whether he knew anyone received pecuniary value; when he was made aware of the conspiracy; and what actions he committed related to the conspiracy. Without this information, Lee essentially asks for an order from this Court directing the government:

> to file a bill of particulars describing with particularity [his] alleged role in the offenses, when he became aware of and joined the supposed conspiracy, what consideration [he] either received or was aware of relative to the murder in this case, and enough facts and details to allow [him] to defend himself at trial against these allegations.

[ECF No. 169 at 6]

20

The government first responds by predictably referencing Rule 7(f) and maintaining that Lee is out of time. Nevertheless, the government cites *Hamling v. United States*, 418 U.S. 87 (1974) and claims that, regardless of Lee's tardiness, the Superseding Indictment sufficiently meets the requirements of Rule 7 and relevant case law. For this, the government asserts that the Superseding Indictment, when considered together with the discovery provided, adequately informs Lee of the charged offenses and provides him with sufficient and fair notice to prepare his defense.

In relevant part, Rule 7 requires that an indictment:

> be a plain, concise, and definite written statement of the essential facts constituting the offense charged…For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

Fed. R. Crim. P. 7(c)(1). Relatedly, the United States Supreme Court established in *Hamling*, 418 U.S. at 117, that an indictment "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *See also United States v. Leveke*, 38 F.4th 662, 669 (8th Cir. 2022). To meet this standard, "[a]n indictment is normally sufficient if its language tracks the statutory language." *United States v. Sewell*, 513 F.3d 820, 821 (2008) (citing *Hamling*, 418 U.S. at 117); *see United States v. Palmer*, 917 F.3d 1035, 1039 (8th Cir. 2019). Critically, the test of sufficiency "is not whether [an indictment] could not have been made more definite and certain, but whether it contains the elements of the offense charged…." *United States v. Tebeau*, 713 F.3d 955, 962 (8th Cir. 2013). "Indictments generally do not have to specify evidence or details of how the offense was committed." *United States v. Raniere*, 384 F.Supp.3d 282, 298 (E.D.N.Y. 2019). Moreover, "an indictment which sets forth the words of the statute itself is sufficient, as long as those words fairly

21

inform the defendant of the elements necessary to constitute the offense charged." *United States v. McKnight*, 799 F.2d 443, 445 (8th Cir. 1986); *see Sewell,* 513 F.3d at 821. In reviewing the sufficiency of an indictment, the district court accept[s] the allegations in the indictment as true and ask[s] whether they can form the basis of the charged offense." *United States v. Welker*, 75 F.4th 820, 822 (8th Cir. 2023).

If an indictment is overly vague, "[t]he court may direct the government to file a bill of particulars" under Rule 7(f) "to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial [and] to avoid or minimize the danger of surprise at trial and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite." *United States v. Hernandez*, 299 F.3d 984, 989-90 (8th Cir. 2002). However, a defendant may not use a motion for bill of particulars merely as a discovery device to obtain evidentiary details about the government's case. *See United States v. Milk*, 66 F.4th 1121, 1133 (8th Cir. 2023).  Granting or denying a motion for a bill of particulars lies within the sound discretion of the trial court. *See United States v. Maull*, 806 F.2d 1340, 1345 (8th Cir. 1986). Importantly, Rule 7(f) requires that "[t]he defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits."

Lee's Motion for Bill of Particulars is clearly untimely.  However, his submitted reasons are well-taken. As this protracted file reflects, the case against Lee and his co-defendants was, for a period of time, "death-eligible," which obviously created a significant subset of issues related to budgeting, mitigation, and the like. Moreover, the government's production of discovery in this matter is considerable and continued well past Rule 7(f)'s 14-day window. Consequently, the

22

Court permits Lee's late filing of his Motion for Bill of Particulars, which relates to both counts of the Superseding Indictment.

Looking to the Superseding Indictment itself, Defendants are charged with conspiracy to commit murder for hire in Count I and murder for hire in Count II.  Both offenses are charged under Title 18 U.S.C. §1958. Count II is also charged under § 2 for "aiding and abetting."  Section 1958  states in pertinent part:

> Whoever…uses or causes another…to use…any facility of interstate ... commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, [shall be punished]….
>
> …'anything of pecuniary value' means…anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage….
>
> …'facility of interstate or foreign commerce' includes means of transportation and communication….

Section 2 states as follows:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

> With the elements of this offense in mind, Count I alleges that:

> Beginning at a time unknown to the Grand Jury, but up to and including July 7, 2023, and through the date of this Indictment, within the Eastern District of Missouri and elsewhere, ANDREW C. HUBBARD, ERIC WASHINGTON, JUSTIN R. LEE, and KIM MOSLEY, the defendants herein, together with other persons known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree to commit an offense against the United States of America, to wit, the crime of murder for hire in violation of Title 18, United States Code, Section 1958, by using and causing others to use facilities of interstate commerce, to wit: cellular telephones, with the intent that the murder of Andreaia Worthem be committed in violation of the laws of the State of Missouri,

as consideration for the receipt of, and along with other benefits. Said conspiracy resulted in the death of Andreaia Worthem on or about July 7, 2023.

[ECF No. 73]

Count Two of the Indictment states that,

On or about July 7, 2023, in the City of St. Louis, within the Eastern District of Missouri, ANDREW C. HUBBARD, ERIC WASHINGTON, JUSTIN R. LEE, and KIM MOSLEY, the defendants herein, aiding and abetting one another and others known and unknown to the Grand Jury, used and caused others to use facilities of interstate commerce, to wit: cellular telephones, with the intent that the murder of Andreaia Worthem be committed in violation of the laws of the State of Missouri, as consideration for the receipt of, and as consideration for a promise and agreement to pay things of pecuniary value, namely money, along with other benefits. Said offense resulted in the death of Andreaia Worthem on or about July 7, 2023. In violation of Title 18, United States Code, Sections 1958 and 2.

[ECF No. 73]

Reading the Superseding Indictment and the relevant statutory language together, both counts meet the requirements of Rule 7 and established case law. Indeed, the charges set forth the essential facts constituting the offenses charged and track the statutory language.  Each of the charges state the offenses occurred on July 7, 2023; identifies Worthem as the victim; names Hubbard, Washington, Lee, and Mosley as the co-defendants; and states that the co-defendants used cell phones to conspire and agree to murder Worthem for money. Also, both counts contain the elements of the offenses charged. For example, Count I states, among other things, that Defendants and their co-defendants intentionally conspired to commit the crime of murder for hire by using cellphones to murder Worthem. Count II states, among other things, that the co-defendants, while aiding and abetting each other, used cell phones with the intent to murder Worthem in exchange for money. With this, the Superseding Indictment fairly informs Defendants of the charges against which they must defend, and second, enables them to plead an acquittal or conviction in bar of future prosecutions for the same offenses. Moreover, Defendants have been provided with all discovery in this case. Clearly, they are aware of the facts supporting the charges.

The Superseding Indictment, in conjunction with the discovery materials provided, adequately enables Defendants to prepare a defense and avoid unfair surprise at trial.

For all these reasons, Lee's Motion for Bill of Particulars, [ECF No. 169] fails to demonstrate that Defendants are entitled to relief.

## RECOMMENDATIONS

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Eric Washington's Motion to Sever [ECF No. 174] be DENIED.

**IT IS FURTHER RECOMMENDED** that Defendant Eric Washington's Motion for Disclosure [ECF 175] be DENIED.

**IT IS FURTHER RECOMMENDED** that Defendant Eric Washington's Motion to Suppress Evidence [ECF 180] be DENIED.

**IT IS FURTHER RECOMMENDED** that Defendant Justin Lee's Motion for Bill of Particulars [ECF No. 169] be DENIED.

**IT IS FURTHER RECOMMENDED** that Defendant Justin Lee's Motion to Sever  [ECF 170] be DENIED.

**IT IS FURTHER RECOMMENDED** that Defendant Justin Lee's Motion for Disclosure [ECF 171] be DENIED.

**IT IS FINALLY RECOMMENDED** that Defendant Justin Lee's Motion to Suppress [ECF 198] be DENIED.

The parties are advised that they have fourteen (14) days in which to file written objections to the foregoing Report and Recommendation unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal

questions of fact. Objections must be timely and specific in order to require review by a District Court Judge. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *see also* 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a).

Pretrial proceedings in this matter have concluded. This matter will be set for trial by further order of the court, before the Honorable Henry E. Autrey, United States District Judge.

Dated this 4th day of February, 2026.

_____
JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE